NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReportersjc.state.ma.us

SJC-12557

RAYMOND COLLAZO  vs.  COMMONWEALTH.


January 9, 2020.


<u>Supreme Judicial Court</u>, Superintendence of inferior courts.
     <u>Homicide</u>.  <u>Constitutional Law</u>, Double jeopardy.  <u>Practice,
     Criminal</u>, Mistrial, Double jeopardy.



     Raymond Collazo appeals from a judgment of the county
court denying his petition for relief under G. L. c. 211, § 3.
Collazo was indicted on charges of murder in the first degree
and other offenses arising from the death of his five month old
infant son James (a pseudonym).  After a jury trial in the
Superior Court, the jury were unable to reach a unanimous
verdict on the murder charge.[1]  The trial judge declared a
mistrial.  Collazo unsuccessfully moved to dismiss the murder
indictment and for a required finding of not guilty, arguing
that a retrial was barred by double jeopardy principles because
the Commonwealth failed to present sufficient evidence to
warrant a conviction.  His G. L. c. 211, § 3, petition sought
relief from the denial of that motion.  We affirm the judgment.

     "So long as the Commonwealth  'presents evidence legally
sufficient to convict' at the first trial, double jeopardy will

_____

     [1] At the close of the Commonwealth's case, the trial judge
entered a required finding of not guilty on so much of the
indictment as charged murder in the first degree based on
deliberate premeditation, leaving it for the jury to consider
whether Collazo committed murder in the first degree with extreme
atrocity or cruelty.  Other charges were dismissed at the
Commonwealth's request.  In addition, the jury acquitted Collazo
of one indictment charging assault and battery.

not generally 'bar retrial after a mistrial [is] declared because of a "hung jury."'" Commonwealth v. Phim, 462 Mass. 470, 473 (2012), quoting Berry v. Commonwealth, 393 Mass. 793, 794, 798-799 (1985). "In making a determination whether the Commonwealth presented sufficient evidence to warrant a finding of guilt, '[the] question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Berry, supra at 794, quoting Commonwealth v. Latimore, 378 Mass. 671, 677 (1979). The trial evidence meets this standard.

Collazo argues that double jeopardy principles bar retrial for two reasons: first, because the evidence was insufficient to establish beyond a reasonable doubt that James died as a result of inflicted injuries, rather than illness or some other cause, and second, because, assuming James did die from inflicted injuries, the evidence was in equipoise as to whether the defendant or James's mother was the perpetrator. See Berry, 393 Mass. at 796, citing Commonwealth v. Carter, 306 Mass. 141, 147 (1940) ("When the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be said to have been established by legitimate proof"). Neither contention has merit.

As to the cause of death, the Commonwealth presented ample expert testimony to establish that James died due to injuries that were inflicted on him. The medical examiner who performed James's autopsy testified to her findings, which included a blood clot on James's brain that was not old enough to have formed a membrane and become adherent, bruising on the inside of his scalp, and fractures to his extremities. The witness also gave her opinion, based on these findings, that James died as a result of abusive head trauma. Other experts testified for the Commonwealth as well. For example, a pediatric radiologist who examined James's bones and took high-detail images of them testified that James had several fractures, some of which showed evidence of healing and others that showed no such signs, indicating that the fractures were of different ages. One fracture was described as a "classic metaphyseal lesion," which the radiologist testified is a type of fracture strongly associated with child or infant abuse. Another expert, a neuropathologist who examined James's brain, testified to injuries that occurred due to lack of oxygen and to acute hemorrhaging, including hemorrhaging in the junction between the brain and the spinal cord. We need not belabor all the testimony. To the extent that Collazo argues that his

own experts offered different opinions as to the cause of death, the jury were free to discount those opinions or to discredit them entirely.[2]  Viewed in the light most favorable to the Commonwealth, the evidence was sufficient to warrant the jury in finding that James died as a result of inflicted injuries.

As to the identity of the perpetrator, we disagree with Collazo's argument that, as in Berry, 393 Mass. at 796, the evidence, even when viewed in the best light for the Commonwealth, equally supported two inconsistent propositions: that Collazo himself inflicted the injuries, or that James's mother did so.  The evidence warranted a finding that James suffered his fatal injuries between approximately 1 A.M., when James's mother fed him, observed his condition to be normal, and went back to sleep, and approximately 6:50 A.M., when James was found unresponsive in his crib and emergency services were called.  The jury could have found that, throughout that time period, Collazo was James's sole caretaker while James's mother slept.  In these circumstances, there was a clear basis in the evidence for the jury to find that it was Collazo, not James's mother, who was responsible for his death.  The jury were not left to speculate between two equally likely propositions.

Conclusion.  Because the evidence was sufficient to warrant a conviction of murder in the first degree based on extreme atrocity or cruelty, double jeopardy principles do not bar Collazo's retrial on that charge.  The single justice neither erred nor abused his discretion in denying relief.

Judgment affirmed.

David B. Hirsch for the petitioner.
John A. Wendel, Assistant District Attorney, for the Commonwealth.

---

[2] While we view the evidence in the light most favorable to the prosecution, we recognize that the defendant offered, through expert testimony, evidence that James died from natural causes, based in part on evidence of pneumonia in his lungs at the time of death.  The defendant also raised questions about, inter alia, the thoroughness of the original autopsy.